November 19, 2160 United States v. Perea. Council, please proceed when you're ready. Thank you, Your Honors. May it please the Court. Can you hear me? Yes. Okay. Sylvia Bias on behalf of Mr. Perea. The issue that we brought forth is that Mr. Perea is not been tested several times. There were several psychologists who evaluated him. All four of them found that he was intellectually disabled. Ms. Bias, can I interrupt you? Before we get to the merits, I have concern about whether we have jurisdiction over this matter because we don't have a final decision from the District Court here. So how can we exercise jurisdiction over this interlocutory appeal? Well, Your Honor, this is an interlocutory appeal. This is governed by the case of Cohen v. Beneficial, the Supreme Court case, which held that if this decision is completely separate from the underlying merits, that the Court may hear the matter and also... Well, Cohen lists three things that you have to have for us to have jurisdiction, and it's pretty clear that this is a narrow exception. And the first is that it must conclusively determine the disputed question. Even if your client goes through trial and is convicted on appeal, he can challenge his competency, right? And any time during that trial, if the trial court thinks that he has behavior that he's exhibiting or his own counsel reports to the trial court that he is not competent, the District Court not only can, it should, it has an obligation to reevaluate his competency all along the process and can change its conclusion that he's competent to go forward. So how can you meet the first prong under Cohen? Your Honor, this case is very different than other cases because my client... Okay, the first prong conclusively determined the disputed question. My client is intellectually disabled. He's been found to be intellectually disabled by four experts. Being intellectually disabled is a static condition. It doesn't improve with medication or with any other way. He's already gone through the competencies classes that people go through when they're found incompetent initially in the Bureau of Prisons. He's already gone through all of that. He's been found to be intellectually disabled on several occasions. There's nothing that's under Cooper versus Alabama, and that is the right not to be tried as an incompetent person is going to be violated. He has a due process right not to be taken to trial if he's not competent. And he's been found, and even though the District Court judge found that he's competent, the District Court judge's findings were based on anecdotal evidence and not on scientific evidence and all of the scientific evidence that's in the record. So it seems you're conflating two concepts. One is, you know, we can come to a conclusion about whether someone is intellectually disabled, but then you look at other evidence and observable behaviors to see whether he is competent to stand trial despite that intellectual disability. And there's no reason that that can't be re-evaluated during the trial if he can't communicate with his attorney effectively, right? Well, Your Honor, the particular facts that are the particular facts on his intellectual disability that is gauged by the IQ tests that he was given, those particular skills with being able to communicate and assist his attorney and assist in his defense, those facts have already been determined by the IQ tests. The adaptive behaviors and all of that, those are, there has to be some kind of adaptive behavior in order to determine whether or not a person is intellectually disabled. But the IQ tests are the ones that determine whether or not a person can assist their attorney. And Mr. Perea cannot assist his attorney. Yes, Your Honor? Going into merits versus what we've asked you in regards to the Cohen Doctrine, can you cite to me the best 10th Circuit case that you have that says, under the Cohen Doctrine, we have jurisdiction in this kind of competency case? Well, there's two different kinds of competency. Counsel, my question is very simple. Is there a 10th Circuit case on a competency issue that, like you're raising here, where the court has held it can go forward under the Cohen Doctrine? Do we have such a 10th Circuit case? I do not find one that is circuit where they have found that under these kind of facts, under competency issue, that we would have on appeal jurisdiction under the Cohen Doctrine. No, I did not. I did not find one with the exact same facts and the exact same postural position. Oh, this is a case truly of first impression that we have. And I would like, I'm not sure that you're going straight at the question that's been asked by the court on the on the Cohen Doctrine. You seem to be moving more to merits than you do to the basis of the jurisdictional issue. I could be wrong. Maybe I'm misunderstanding. Well, Your Honor, again, with respect to the first issue, conclusively determine the disputed question because the fact and because of the fact that my client is it has a static mental incapacity, that's not going to improve. We are at a place where the court has made a conclusion that under the trial court has made a decision with respect to his going forward in a trial. And you make that same argument after the trial on appeal. I can make the same argument, but his due process rights are going to be violated by them. Because he went to trial? Because he went to trial and he's incompetent. So what case do you have for that? Because the instances in which the Supreme Court has ruled on that are pretty sparse. There's double jeopardy and there's legislative immunity, but I have yet to see anything that would support the position that you're now asserting. So is that to a first impression? Yes, I believe so, because I did not find any cases that are right on point with this. And this is a substantive due process claim. If we disagreed with you and we said he didn't have a constitutional right to immunity from suit, that he actually had to go through trial and then raise it on appeal, would you agree we lack jurisdiction to hear this appeal? No, I think that the court does have jurisdiction. I'm making that argument that the court does have jurisdiction. I understand what you're saying. I understand that he can bring this up later on. But the Supreme Court has held that this is a substantive right. It's a substantive right to not be tried when you're incompetent. You have a substantive right not to have an unreasonable search, right? But we don't immediately hear the denial of a suppression motion. We let the trial go forward and then we consider that, right? How is this different? This is different because nothing will change. Nothing will change in the future regarding whether or not he can assist his attorney and whether or not he's intellectually disabled. He's going to be intellectually disabled all of his life. It has changed, hasn't it? I mean, at least from the government's expert perspective, he was incompetent to proceed earlier, but he's not incompetent to static and can never change, doesn't seem to be borne out by the facts of this case. And the facts of the case are that the government's expert used only anecdotal evidence to say that he had the adequate appropriate adaptive deficits that were not as serious as we were saying that they were. And that was all based on anecdotal evidence. There's no standard for using phone calls to determine that somebody is competent. There's no professional psychological or psychiatric standard for that. There's the standard that's used to determine, and especially in a case where a person is incompetent, and the subtest in this position, in this case, that determined that he was not competent was the lack of verbal abilities to be able to assist his counsel. And he used anecdotal evidence of telephone calls mostly with his mother when he talked about that my client had the adaptive skills to proceed to trial, but the adaptive skills are not the skills that are used in terms of determining whether he has the cognitive ability. And that's what can and should be used. And that's the starting point from where a court could look to see whether or not there has been error here. And that is whether or not that it was based on scientific as opposed to just based on anecdotal evidence. So, in this case, if the court doesn't review the case now, I will come back and do the same argument in the future. But the thing about that is that we're at a position right now where nothing is going to change in terms of his ability to assist counsel. And it would be a violation of his due process rights and a miscarriage of justice if this case were to proceed based on the status of his mental status now that he has. With the court's seconds that I have for rebuttal. Very well. Thank you. Thank you. Council, we're ready to hear from you when you're ready. Yes, Your Honor. I may please the courts and opposing counsel. My name is Alex Ubaez. I am an assistant United States attorney in the District of New Mexico, and I represent the United States in this matter. As this court is reviewed and we'll hear following five separate forensic evaluations by four different doctors, lengthy period of restoration, nearly two days of testimony, substantial evidence and briefing, the district courts correctly found that Mr. Perea was competent to proceed to trial. He now asks this court in the middle of this case proceeding to trial to reverse the district court's factual finding and determine on the record before this court, which includes 18 new articles that were previously unsubmitted to the trial courts, that Mr. Perea is in fact incompetent. He doesn't appear to be alleging any procedural error. Now I want to start with the motion to dismiss, and I just wanted to note, listening to opposing counsel's arguments, it appears to me that this argument is simply too strong to follow Mr. Perea's logic. If this court currently finds him to be competent, his status is intellectually disabled, which all the experts agree is his current status, would factually prohibit him from re-raising competency. It would also legally foreclose him from re-raising competency should this court find that this mid-trial or pre-trial order be conclusive. As this court has noted, there are important policy reasons for why we want to limit the collateral orders that this court reviews before trial. That's compelling interest in prompt trials, preserving respect for the trial court and district judge, reducing the ability of litigants to harass opponents, clog courts, and there are narrow exceptions. They, of course, as this court has noted, should be small, modest, and narrow. As this panel has already identified, the collateral orders that meet this standard must have three things. They must conclusively determine disputed questions. They must resolve an important issue separately from the merits and be effectively unreviewable. We would agree that this does, that a competency order does resolve an important issue separately from the merits, but that's where our agreement ends. As this panel has already identified, starting with the final factor, these decisions are reviewable. Although I wasn't able to identify any directly on point Tenth Circuit cases coming to this conclusion in the context of interlocutory appeal, I do take as evidence every decision by this court that has reviewed after a trial conviction, whether or not a competency evaluation before or procedural violation with relation to competency before, met constitutional muster. And so we can, and I cited several of those in my brief, and I don't, as this panel's already noted, did not notice any that say the converse. So I would ask this court to look at what other things have met this unreviewable standard, such as double jeopardy, the speech and debates, as well as other types of orders that are effectively, the harm has been committed by the time the trial occurs, such as confinement or sales compulsory medication. So these are situations in which there is an immunity or a direct harm, which are not addressed through waiting until a trial conviction and then appeal. But I think, and looking at the cases cited by defense in their response to my motion to dismiss, they look at Dusky and other cases where what we're looking at is whether there was insufficient or sufficient, should I say, information on the record in front of the trial courts. And that's not the current situation that's being given to this panel. And really, I think if the court, if this court is equipped to review competency on the current record, it will be equipped to review competency after trial as well. So, I mean, we do agree. However, it is a due process violation. But as Judge McHugh pointed out, there are many due process violations, including Fourth Amendment violations, rights to present evidence, rights to cross-examine, presumption of evidence, presumption of innocence, all of which relate directly to a person's due process rights, all of which do get an interlocutory appeal to bring it up to Tenth Circuit in the middle of the proceedings below. And I would like to refer this court over to several of our other jurisdictions who have tackled this issue or issues around it for guidance here. I think, importantly, I'll refer the court to the Ninth Circuit's decision no-runner. The Supreme Court has never held that incompetency includes an absolute right not to be tried, or that the competency to a determination cannot be reviewed effectively on appeal after conviction. Instead, it concludes, as many other courts do, that competency is a right to a fair trial. And so, and I don't believe, I don't read any analysis from the defense arguing why this is not the case. The two cases cited by the defendant in their reply, Jackson and Greenwood, discuss indefinite confinement, which we do agree is directly appealable. But when we look in the context of the statute and where we are procedurally now, the statute provides for a period of restoration itself, thereby suggesting, I would say to this court, that it is statutorily acceptable for an incompetent person to be pending trial. And so that, I would say that cuts against the idea that once we've determined a person competent or incompetent, that's the end of the matter. And finally, I think the problem of competency is ever-changing. Not only is it ever-changing with the specific defendants who we're talking about, but also the field. And so by foreclosing, as Mr. Preah appears to be asking this court to do, any future litigation or factual contestation of these, of Mr. Preah's competency, it sort of, in fact, limits his abilities and restricts his constitutional rights in a way this court should hesitate to do. And so if there's any specific questions on the motion to dismiss, I'm happy to address them. Otherwise, I'd like to move on to the substance. So on the substance of appeal, and as Ms. Pias has correctly identified, I believe that we will be here once this panel makes a decision today or in the coming months, and then we go to trial, and then it comes back, because it is not, as I said before, a conclusive determination. When we come back, this court will look at the, first of all, the standard of review. I think that when we're looking at how we approach these cases, as is identified in the Lafferty v. Cook decision by this court, there are sort of a two-step process. First is whether the law that was applied in the competency proceeding was correct. And second, whether that standard was applied to the facts. And so the first part is what grants us, this court's access to de novo review. That is not the case. Mr. Preah has not alleged any procedural deficits in the manner in which this proceeding was borne out, or in any of its intricacies, such as whether experts were allowed. There is also no rulings from the court limiting out certain cross-examinations or certain testimonies. So therefore, what's before this court is a question of fact, and which this court must review for clear error. The clearly erroneous standard is quite a difficult one for Mr. Preah to overcome, because what this court has to find, based on the record, is that there's a definite and firm conviction that a mistake was committed. That, of course, in the clear error realm, the district court doesn't need to be correct, but its conclusion must be permissible in the light of the evidence. And of course, this court has also found that a district court is allowed to credit testimony of one doctor over another in this context. It is well as allowed to rely on information outside of neurological testing, such as trial observations of the behavior of the defendant. I think in Bogorgwin, this court looked at pro se filings and other statements made. So that is within the realm that this court has allowed trial courts to review competency. Furthermore, the legal standard for competency, I think we all agree on here. It's factual understanding of the proceedings, rational ability to understand the proceedings around him, and an ability to consult with attorney and reasonable degree of rational understanding, enabling him to assist in his defense. I think all the parties, including the experts in our briefing and during the testimony, agreed that he had a low-level, yet sufficient factual understanding of the proceedings, as well as a rational understanding of the facts of his case and the proceedings, leaving for us a single question, as identified by the district courts, whether he has currently the ability to consult with his attorney with a reasonable degree of rational understanding, enabling him to assist in his defense. And I would argue it does. Throughout the, there are various reasons on the record, and the record is very long, that support this conclusion, at least under, certainly under the clear error standard. So there are two experts at this point who testified with each other, I would say, regarding a whole battery of tests. Dr. Chavez, as the district court found, Dr. Chavez, who was the final, who was the witness who testified on behalf of a finding of competency, related to the courts, that he observed numerous data points as a part of his conclusion, beginning with, as both experts agreed he should, with the testing that was done, but also supplemented by background information, the general mental status of Preah and how he presented in person, his performance during weekly competency restoration groups, the results of the CAST-MR and other, other tools of analysis, two different competency interviews, his performance before, the presentation before the risk assessment panel, his presentation at the risk assessment panel, his affect as observed both by Dr. Chavez and other individuals in the setting during his period of incarceration, pending his competency, and as well, significantly a large number of phone conversations which show us that the conclusions Mr., that Dr. Westreed came to regarding Mr. Preah's competency do not present an individual that we, the same individual, I should say, that we see in the phone conversations. And so this, this, this grants a the well, all of the things I just described, the opportunity to observe, which was described by the district courts as months for Dr. Chavez on a weekly basis, and in addition to all the things that I've mentioned that he also reviewed, a sizable amount of evidence that he had to weigh against Dr. Westreed's eight hours with Mr. Preah and an hour and a half with his mother. So with, with all of these things and with the current standards that this court is faced with, Mr. Preah is not, this court does not have jurisdiction to make a ruling on whether at trial that has not occurred, Mr. Preah is competent to proceed. And whatever his weaknesses, and that we did agree that there are weaknesses, the district court was correct to find that he has a current, sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and that the rational as well as factual understanding of the proceedings against him. So based on the substantial evidence below and the, the, the argumentation here today, I would submit to this court that this appeal should be dismissed. And if not, it should be found that the, that the lower court's determination of competency was not in clear error. Unless there are further questions, I yield back the balance of my time. Thank you. Just briefly, I'm not sure how much time I think I just have like maybe a couple of minutes. As I indicated before, this, this is a case, a first impression, but it is a case where the person, everything has already been litigated on the competency and the fact that he's intellectually disabled and he has these verbal deficits that there's ample evidence in, in the record that the judge did not give great weight to all of the other experts that found that he, he was incompetent and that did not base his decision on the science that is out there based on intellectual disability. And the fact that other scientists or Dr. Chavez, who changed his mind about him being incompetent, changed his mind because he was at a panel interview for this case got to that point. At the panel interview was the chief psychologist of the prison and the chief social worker of the prison who said that they found that he disclosed more facts than he had before. Dr. Chavez did not take any notes, did not specify why he changed his mind about why maybe there were other indications or other efforts that he would try to make to show that Mr. Perea was competent. In this case, the record is replete with experts opinions about how he's not competent and Dr. Chavez applied non-standardized information regarding phone calls with his mother that to, to change his mind and to prove the data points that the government is talking about to show that he's competent now. And those are not the ones that those are not the points that should be relied upon. It's the intellectual, the cognitive ability, which Mr. Perea does not have. Thank you for your time. Thank you counsel for your arguments. The case is submitted and counsel are excused.